UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAIGE THOMPSON,<br><br>              Plaintiff,<br><br>         v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration,<br><br>              Defendant. | NO. EDCV 04-00912-SS<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff Paige Thompson ("Plaintiff") seeks review of Defendant's decision denying her disability benefits, having filed a Complaint on July 27, 2004. Plaintiff is represented by Bill Latour, Esq. Defendant is represented by Assistant United States Attorney Cedina M. Kim. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c).

This matter is before the Court on the parties' Joint Stipulation filed on June 28, 2005. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

**PROCEDURAL HISTORY**

On December 31, 2001, Plaintiff protectively filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Plaintiff also filed an application for Disability Insurance Benefits under Title II of the Social Security Act on January 4, 2002.[1] (Administrative Record ("AR") 43-46, 196-98). Plaintiff claimed that she became unable to work on December 5, 2001 due to depression and chronic bronchitis. (AR 43, 51, 196). In particular, Plaintiff alleged that these conditions prevented her from concentrating and caused "low attention span" and "sleepiness." (AR 51).

The Social Security Administration (the "Agency" or "Commissioner") denied Plaintiff's claim for benefits on April 12, 2002. (AR 21-24). The Agency determined that Plaintiff's condition was not disabling. (AR 21). On reconsideration, the Agency affirmed its decision. (AR 25-30). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 31).

A hearing before ALJ F. Keith Varni was conducted on April 15, 2003. Plaintiff, who was represented by counsel, testified in her own behalf. Her mother and a vocational expert also testified at the hearing. (AR 204-21).

---

[1] Title II of the Social Security Act is codified at 42 U.S.C. §§ 401-434 ("Federal Old-Age, Survivors, and Disability Insurance Benefits"). Title XVI is codified at 42 U.S.C. §§ 1381-1385 ("Supplemental Security Income for Aged, Blind, and Disabled").

On April 30, 2003, the ALJ issued a decision denying benefits. (AR 13-17). Plaintiff sought review of this decision before the Appeals Council. (AR 5). On May 28, 2004, the Appeals Council denied review, and the ALJ's decision became the final decision of the Commissioner. (AR 5). Plaintiff commenced the instant action on June 8, 2004.

## FACTUAL BACKGROUND

Plaintiff was born on November 24, 1979 and has a high school education. (AR 43, 57). In December 2001, Plaintiff, then age twenty-two, was hospitalized for five days due to depression and suicidal ideations. (AR 102). She had tried to choke her sister the day before and she was also having "relationship problems." (AR 102). Plaintiff told her sister that she "want[ed] to get drunk" and kill herself. (AR 102). She was preoccupied with "cutting" her wrist or overdosing. (AR 109). Plaintiff claimed that she had a history of auditory hallucinations and had several "suicidal gestures" in the past. She was diagnosed with "depressive disorder, not otherwise specified" and "polysubstance abuse." (AR 102).

At the initial psychiatric evaluation, Plaintiff told the hospital staff that she had used "speed" almost daily for over four years.[2] (AR 102, 109). She admitted that some of her hallucinations were related to her drug use. (AR 109). She also abused marijuana and smoked a pack of cigarettes a day. (AR 109). She had previously been at three

---

[2] Plaintiff admitted to having engaged in "polysubstance abuse" since she was sixteen years old. (AR 160). Plaintiff also had a history of abusing marijuana. (AR 152).

different drug rehabilitation programs but left each time because she "did not feel that she needed help." (AR 106-07). On December 5, 2001, when she was admitted to the hospital, she was assessed a Global Assessment of Functioning ("GAF") score of 20.[3] (AR 102). Upon discharge from the hospital, Plaintiff denied suicidal and homicidal ideations and was assessed a GAF score of 45.[4] She was referred to an outpatient clinic and was prescribed Effexor-XR and Zyprexa.[5] (AR 102-03).

On December 17, 2001, Plaintiff began mental health treatment with Dr. Henry Htwelay Khin and clinical therapist Memory Rush at the Mesa Counseling Services, a program in the San Bernardino County Department of Behavioral Health. (AR 157). On that date, Plaintiff was assessed

---

[3] A Global Assessment of Functioning Score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) (hereafter, "DSM IV"). A rating of 11-20 on the GAF scale indicates "[s]ome danger of hurting self or others (e.g., suicide attempts without clear expectation of death; frequently violent; manic excitement) OR occasionally fails to maintain minimal personal hygiene (e.g., smears feces) OR gross impairment in communication (e.g., largely incoherent or mute)." See DSMV IV, at 34.

[4] A rating of 41-50 on the GAF scale indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." See DSMV IV, at 34.

[5] Effexor-XR is prescribed to treat depression and abnormal anxiety. Physicians' Desk Reference, 2005 WL 1158920 (PDR) (2005) (hereafter "PDR"). Zyprexa helps to manage symptoms of schizophrenia, the manic phase of manic depression, and other psychotic disorders. PDR, 2005 WL 1157895.

a GAF score of 44. (AR 157). On January 8, 2002, Plaintiff was said to have a "good prognosis with continuing mental health treatment" and her expected duration of incapacity was "temporary." (AR 167). Plaintiff was expected to be released from treatment sometime between "June - December 2002." (AR 167).

However, Plaintiff continued to use drugs after she began treatment. On January 24, 2002, Dr. Khin noted that Plaintiff admitted she had used "speed" two days earlier and marijuana four days earlier. (AR 154). On March 5, 2002, Plaintiff admitted to Dr. Khin that she was still using "speed" and marijuana. (AR 152). Plaintiff also admitted that she had not been compliant with her medications. She stated that she did not take the Zyprexa because it made her "sleep a lot." (AR 152). Dr. Khin took Plaintiff off Zyprexa and prescribed Geodon[6] instead. He continued to prescribe Benadryl and Effexor-XR. A couple of days later, he switched Plaintiff from Geodon to Risperdal.[7] (AR 165-66).

Plaintiff began to show improvement with treatment. On August 23, 2002, Plaintiff told Dr. Khin that she was "OK." (AR 149). However, on August 30, 2002, Plaintiff suffered a recurrence of depression and was assessed a GAF score of 48. (AR 195). On September 20, 2002, Plaintiff reported that she was doing "pretty well." (AR 190). Plaintiff apparently stopped receiving therapy sessions in September

---

[6] Geodon is prescribed for the treatment of schizophrenia. PDR, 2005 WL 1158531.

[7] Risperdal is prescribed to treat severe mental illnesses such as schizophrenia. PDR, 2005 WL 1157831.

2002. (AR 180, 190). A therapist recommended that Plaintiff be treated with medications only. (AR 180). In January 2003, treatment notes indicate that Plaintiff was not compliant with her medications. (AR 178). Dr. Khin stopped prescribing Risperdal, Effexor-XR, and Benadryl and prescribed Ambien, Wellbutrin, and Abilify instead.[8] (AR 177-78, 183). On January 28, 2003, Plaintiff reported that she was feeling better and denied hearing voices. (AR 176). By March 2003, she still complained of occasionally hearing voices, but she stated that she "didn't follow the voices." (AR 170).

An Agency psychiatrist, Dr. David Gross, reviewed Plaintiff's mental health records and concluded on April 5, 2002, that Plaintiff would be capable of performing sustained non-public, simple, repetitive tasks by December 2002. (AR 140, 145). Agency physicians also concluded that Plaintiff's physical conditions were non-severe. (AR 143).

At the hearing before the ALJ, Plaintiff stated that she continued to see a psychiatrist to receive her medications. At that time, she was taking Wellbutrin, Abilify, Ambien, and Gabitril.[9] (AR 210-12). She thought the Wellbutrin kept her "stable" and that the Abilify helped her as well. (AR 211). She testified that she had only been hospitalized once and had not been hospitalized since that visit in December 2001.

---

[8] Ambien is prescribed to treat short-term symptoms of insomnia. PDR, 2005 WL 1158692. Wellbutrin is prescribed to help relieve certain kinds of major depression. PDR, 2005 WL 1131430. Abilify is prescribed for the treatment of schizophrenia. PDR, 2005 WL 1157694.

[9] Gabitril is prescribed to prevent seizures. PDR, 2005 WL 1157728.

6

Plaintiff also testified that she still occasionally heard voices, had suicidal thoughts, and suffered from anxiety attacks. She also claimed that she had problems with her memory and her concentration. (AR 208-209).

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[10] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 404.1520. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the

---

[10] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. § 404.1510.

claimant is found not disabled.  If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4) Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5) Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R. §§ 404.1520(b)-404.1520(f)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54 (citing Tackett).  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[11] age,

---

[11] Residual functional capacity is "what [one] can still do despite [her] limitations" and represents an "assessment based upon all

education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520(f)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation described above. At the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability. (AR 16). Next, the ALJ found that Plaintiff had no functionally limiting physical impairment. He specifically found Plaintiff's complaints of chronic bronchitis to be non-severe. He concluded that Plaintiff was able to work at any physical exertional level. (AR 15, 17). However, he found that Plaintiff had "severe" mental impairments from affective disorder and history of abuse of methamphetamine, marijuana, and use of alcohol. (AR 16).

At the third step, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments appearing in the "Listing of

---

of the relevant evidence." 20 C.F.R. § 404.1545(a)

9

Impairments" set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 16). In the fourth step of his analysis, the ALJ found that Plaintiff had the mental residual functional capacity ("RFC") for simple, routine, repetitive, non-public tasks. (AR 17).

Based on the Plaintiff's mental RFC and on the testimony of the vocational expert, the ALJ concluded that Plaintiff could perform work existing in significant numbers in the regional economy, including the jobs of an assembler, packager, sorter-grader, and bundler. (AR 16). Therefore, based upon the evidence and the vocational expert's testimony, the ALJ concluded that Plaintiff was not disabled through the date of the decision. (AR 16-17).

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9 th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To

determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## DISCUSSION

Plaintiff argues that the ALJ failed to consider the "opinion of disability" by Dr. Khin, her treating psychiatrist. Plaintiff also contends that the ALJ erred by failing to consider the opinion of Plaintiff's treating therapist. The Court disagrees in both respects, as discussed below.

**A. The ALJ Gave Appropriate Weight to the Treating Physician's Opinions and Considered the Relevant Treating Physician's Evidence**

As treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians. Smolen, 80 F.3d at 1279; Lester v. Chater, 69 F.3d 1453, 1463 (9th Cir. 1995) (more weight should be given to the opinion of a treating source than a non-treating source). Here, Plaintiff contends that the ALJ failed to attribute proper weight to the opinion of treating

1  psychiatrist Dr. Henry Khin. (Jt. Stip. at 3-4). Plaintiff's
2  contention lacks merit.

4      In his decision, the ALJ cited evidence that Plaintiff's condition
5  was improving with treatment. (AR 15). The ALJ noted that, on a report
6  dated January 8, 2002, Plaintiff was "felt to be demonstrating good
7  progress with mental health treatment." (AR 15). Plaintiff's progress
8  led her clinical therapist to anticipate that, by June 2002, Plaintiff
9  would be released from treatment and would be capable of performing work
10 activity. (AR 15).

12     Other evidence in the record, including the treating psychiatrist's
13 own notes, also supports the ALJ's finding that Plaintiff was improving
14 with treatment. In his treatment notes dated August 23, 2002, Dr. Khin
15 noted that Plaintiff claimed she was "ok." (AR 149). On September 20,
16 2002, Plaintiff reported that she was doing "pretty well." (ALJ 190).
17 On January 28, 2003, Dr. Khin noted that "[Plaintiff] claimed she feels
18 better" and denied hearing voices. (AR 176). At the hearing on April
19 15, 2003, when asked whether medication was helping her, Plaintiff
20 responded "Yes, I think it does." (AR 211). She thought the
21 antidepressive medication kept her "stable" and that the antipsychotic
22 medication also helped her. (AR 211).

24     The ALJ also noted Plaintiff's abuse of methamphetamine, marijuana,
25 and alcohol. (AR 15). When she was hospitalized in 2001, Plaintiff
26 admitted to having "us[ed] speed regularly" for four years. (AR 102).
27 She also admitted abusing marijuana and smoking a pack of cigarettes a
28 day. (AR 109). The record also indicates that she continued to use

drugs after she was hospitalized. On January 24, 2002, Dr. Khin noted that Plaintiff admitted she had used "speed" two days earlier and marijuana four days earlier. (AR 154). On March 5, 2002, Plaintiff admitted to Dr. Khin that she was still using "speed" and marijuana.[12] (AR 152). Plaintiff's continuous and prolonged drug use suggests that, absent this abuse, her health would improve.

The ALJ also noted that Plaintiff's minimal treatment supported his finding that Plaintiff was not disabled. (AR 15). A claimant's treatment history is strong evidence that reflects the severity of the claimant's symptoms. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (holding that Plaintiff's treatment history was "powerful evidence" regarding the extent to which Plaintiff was in pain); see also Smolen, 80 F.3d at 1284. At the hearing on April 15, 2003, Plaintiff testified that she was seeing a psychiatrist for twenty minutes every two weeks, basically just to receive medication. (AR 210). She also

---

[12] Agency medical consultants thought that Plaintiff's mental condition appeared to be "related to drug abuse." (AR 145). While the ALJ's denial of disability benefits was not based on Plaintiff's drug use, the Court notes that an individual would not be considered to be disabled if alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the individual is disabled. See Contract With America Advancement Act ("CAAA"), Pub. L. No. 104-121 § 105(a)(1)(C); 20 C.F.R. §§ 404.1535, 416.935.

Here, because the ALJ did not find that Plaintiff was disabled even with her drug and alcohol addiction factored into the analysis, he was not required to determine whether Plaintiff would still have been disabled if she stopped using drugs or alcohol. See Bustamante v. Massanari, 262 F.3d 949 (9th Cir. 2001) (five step sequential evaluation must first be conducted "without separating out the impact of alcoholism or drug addiction." If after conducting this inquiry, the ALJ concludes that an individual is disabled, then it must be determined whether the claimant would still be found disabled if he stopped using alcohol or drugs).

testified that she had not been hospitalized since December 2001. (AR 212). This infrequent treatment schedule is further evidence that supports the ALJ's finding that Plaintiff was not disabled.

Furthermore, the ALJ noted that Plaintiff was not fully compliant with her medication. (AR 15). Treatment notes confirm that Plaintiff did not take her medication at all times. In March 2002, Plaintiff admitted she was not taking her Zyprexa medication, which was prescribed to treat her psychotic symptoms. (AR 152). In January 2003, Dr. Khin again noted that Plaintiff was not compliant with her medications. (AR 178). A claimant may not receive disability benefits if she fails to follow treatment prescribed by her treating physician. See 20 C.F.R. §§ 404.1530(a), 416.930(a) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work."); 20 C.F.R. §§ 404.1530(b), 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled . . . .").

**B.  The ALJ's Failure to Expressly Reference the GAF Score Does Not Require Remand**

Plaintiff argues that the ALJ's failure to specifically mention the GAF score assessed by the treating psychiatrist amounted to a violation of the "treating physician rule." She points to a GAF score of 44 that was assessed on December 17, 2001. (Jt. Stip. at 3). However, the fact that the GAF score is not expressly mentioned in the ALJ's decision does not require remand.

First, nowhere in his opinion did the ALJ specifically "reject" the treating physician's GAF score. In fact, as noted above, the ALJ's residual functional capacity assessment is supported by the treating physician's own treatment notes. Furthermore, the ALJ specifically discusses treatment notes on which GAF scores appear. (AR 15)

Second, GAF scores are not dispositive in social security cases. See 65 Fed. Reg. 50746, 50765 (August 21, 2000) (GAF scores are not directly correlative to Social Security severity assessments). It is only intended to be used to plan treatment and measure its impact. See DSMV IV, at 32. The ALJ's failure to reference the GAF score in the residual functional capacity assessment does not, by itself, make the assessment inaccurate. See Howard v. Comm'r of Social Security, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."); see also Brewster v. Barnhart, 366 F. Supp. 2d 858, 876 (E.D. Mo. 2005) (citing Howard); Quaite v. Barnhart, 312 F. Supp. 2d 1195, 1200 (E.D. Mo. 2004) (citing Howard).

Third, a GAF score does not relate to the durational requirement of a disability classification. The GAF score is a measure of the level of functioning at the time of the evaluation. DSM-VI, at 33. Disability, however, is an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months. See Burch, 400 F.3d at 679. Plaintiff

was assessed a GAF score of 44 on December 17, 2001.  (AR 157).  On January 8, 2002, Plaintiff's duration of incapacity was expected to end in "June - December 2002."  (AR 167).  Therefore, Dr. Khin's GAF score may have reflected Plaintiff's status during a limited period of time, but the ALJ was required to examine a broader range of medical evidence to determine if Plaintiff was disabled under the statutory definition.  Thus, the fact that the ALJ did not expressly reference Plaintiff's GAF score is not reversible error.

### C. **The ALJ's Appropriately Considered the Treating Therapist's Assessment.**

Plaintiff argues that the ALJ erred by failing to consider treating therapist Memory Rush's assessment.  However, the ALJ committed no such error.  Contrary to Plaintiff's contentions, the ALJ referred to all of the treatment notes submitted by the County of San Bernardino's Department of Behavioral Health and Mesa Counseling Services where Ms. Rush worked.  See AR 15 (ALJ cites exhibits 3F and 6F, which are records from Dr. Khin and Ms. Rush).  He also specifically discussed Ms. Rush's medical report dated January 8, 2002, which was sent to the county welfare department.  (AR 15).  Thus, Plaintiff's argument is not supported by a closer reading of the ALJ's decision and the record.

\\
\\
\\
\\
\\
\\

**CONCLUSION**

As discussed above, substantial evidence supports the ALJ's decision. Accordingly, pursuant to sentence four of 42 U.S.C. § 405(g),[13] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 19, 2005.

_____/s/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

---

[13] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."